# Sovereign Camp of the Woodmen of the World v. Purdom.

(Decided February 27, 1912.)

## Appeal from McCracken Circuit Court.

1. Insurance—Life—Death From Violation of Law—Self-Defense—Instructions.—In an action by the widow of a man who was killed to recover on a policy of insurance issued on his life, the defense being that he was the aggressor in the difficulty and came to his death while violating the law of the State, it is error to instruct the jury on self-defense when there is no evidence on which to base such an instruction.

2. Same.—In such an action, evidence examined and proper instructions directed to be given.

3. Same—Evidence—Judgment Acquitting Slayer.—In a civil action by the widow of a man who was killed to recover on an insurance policy issued on his life, the judgment of an examining court acquitting the man who killed him, can not be regarded as evidence tending to sustain the defense that decedent was the aggressor, and therefore when killed, was engaged in violating the law of the State.

4. Evidence—Affidavit by Plaintiff for Peace Warrant Against Decedent.—In an action by the widow of a man who was killed to recover on an insurance policy issued on his life, the defense being that decedent when killed was violating the law of the State, an affidavit made by plaintiff two days before the homicide, for the purpose of obtaining a peace warrant against decedent, and containing nothing tending to show decedent's state of mind towards his slayer, is not admissible as evidence.

WHEELER & HUGHES for appellant.

A. W. BARKLEY and BERRY & GRASSHAM for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On June 6th, 1908, appellant, Sovereign Camp of the Woodmen of the World, a fraternal insurance company, issued to George F. Purdom, referred to in the record as Frank Purdom, a contract of insurance for $1,000.00, wherein appellee, Zula M. Purdom, his wife was named as beneficiary. On November 13th, 1910, Frank Purdom was killed by one R. A. Thompson, commonly known as Bert Thompson. At that time the contract was in full force, and the deceased was a member in good standing. Appellant declined to pay the insurance because of the following provision in the contract.

"If the member holding this certificate shall die in consequence of the violation or attempted violation of the laws of the State or of the United States, or any other Province or Nation; or if any of the statements or declaraations in the application for membership and upon the faith of which this certificate was issued, shall be found in any respect untrue, this certificate shall be null and void and of no effect; and all moneys which shall have been paid, and all rights and benefits which have accrued on account of this certificate, shall be absolutely forfeited without notice or service."

Appellee then brought this action against appellant to recover the insurance. Appellant pleaded the above provision of the contract, and asserted that Frank Purdom came to his death from a gunshot wound inflicted upon him by one Thompson in his necessary self-defense; that Purdom had repeatedly fired upon Thompson with the intent to kill him before Thompson fired at Purdom; and that when Purdom came to his death, he was engaged in the violation of the laws of the State, and that his death was the result of such violation. The affirmative allegations of the answer were denied by reply. The jury returned a verdict in favor of appellee for $1,000.00. From the judgment entered thereon, this appeal is prosecuted.

Appellant contends that the trial court erred in giving and refusing certain instructions, and in rejecting certain evidence.

The evidence for appellant is to the effect that on the day of the homicide Frank Purdom was a drunken maniac. He had previously shot at Gean Thompson, Bert's brother, in the mistaken belief that he was Bert. Bert then went to the barn where Frank Purdom was, and Frank attempted to kill him with a pistol, but was prevented by his brother, Les Purdom. Bert Thompson then left the barn, and when he reached a point about one hundred and seventy-five feet from the lane leading to Frank Purdom's house, and while his back was turned, Frank Purdom drew his pistol and began to fire on him. Bert then turned and fired at Frank.

According to the evidence for appellee there had been a previous difficulty at the barn. Bert Thompson came there with his shotgun; Frank became very much excited and drew his pistol. Les Purdom caught Frank and tried to hold him. Bert tried to strike Frank with his gun. Frank's father says that Frank was not drunk,

but Les Purdom says that he was. Finally, this diffi-
culty seems to have been adjusted. Les Purdom took
Bert and started home with him. Les then left, and
neither he nor his father saw what took place when
Frank was killed. The only witness for appellee as to
the circumstances of the homicide is appellee herself.
She says that her husband fired his pistol twice up in
the air. He did not shoot at Thompson at all. After
that Thompson turned and started towards her husband,
and then fired the fatal shot. On cross-examination, she
admitted that she stated at Thompson's examining trial
that her husband shot at Thompson twice before Thomp-
son fired.

The court instructed the jury as follows:

1. "The court instructs you to find for the plaintiff
$1,000.00 with interest from the 13th day of November,
1910; unless you shall believe from the evidence in this
case, that at the time plaintiff's decedent was shot and
killed by R. A. Thompson, said decedent was unlaw-
fully and not in his necessary or apparently necessary
self-defense shooting at said Thompson with intent to
kill him or to inflict upon him great bodily harm, in
which event, and if you shall so believe, then the law is
for the defendant, and you will so find.

2. If, however, you shall believe from the evidence
that at the time said decedent was shot and killed by
said Thompson, that said decedent Purdom had reason-
able grounds to believe, and in good faith did believe,
as it then appeared to him, that he was then and there
in immediate danger of losing his life or suffering great
bodily harm at the hands of said Thompson, and as it
appeared to him, there was no other safe means of avoid-
ing said danger, except to shoot said Thompson, if he
did shoot at said Thompson, then such shooting would
be in self-defense, and would not be a violation of the
law within the meaning of the terms of the policy sued
on, and if you shall so believe from the evidence, then
the law is for the plaintiff, and you will so find.

3. "The court instructs the jury that if you shall
believe from the evidence in this case that at the time
the decedent, G. F. Purdom, fired the two shots, if he
did fire them, he was not shooting at R. A. Thompson,
with intent to kill him or inflict upon him great bodily
harm, but that he fired said shots into the air, then such
shooting would not be a violation of the law within the
meaning of the policy sued on, although said Thompson

may have in good faith believed said Purdom was shooting at him.''

Of course, in a case like this, the abstract proposition whether or not the decedent was violating the law when he was killed should not be submitted to the jury. Such an instruction would leave it to the jury to decide what was a violation of law without giving them any guide to go by. The court should always tell the jury what constitutes a violation of law. In this case, however, we fail to find any evidence upon which to base an instruction on self-defense. According to the evidence for appellant, Thompson had his back towards the decedent and was going from him, when the decedent fired the two shots. According to appellee, Thompson was going from the decedent when the decedent fired the two shots into the air. After that Thompson returned and started towards decedent. On cross-examination she admits that she stated on the examining trial that her husband shot at Thompson. No witness says that Purdom fired at Thompson while the latter was advancing towards him. He fired while Thompson was going from him. That being true, no question of self-defense is presented, and the court erred in submitting this phase of the case in instructions Nos. 1 and 2. In lieu of these instructions, the court, on another trial, if the evidence be substantially the same, will tell the jury to find for the plaintiff, unless they believe from the evidence that decedent, Frank Purdom, brought on the difficulty by shooting at Thompson with intent to kill him or inflict upon him great bodily harm; in which event, and if they so believe, they will find for the defendant. This instruction together with instruction E, will present the whole law of the case.

The court properly excluded from the consideration of the jury the judgment of the examining court acquitting R. A. Thompson. That was a criminal proceeding by the Commonwealth. The only parties were the Commonwealth and Thompson. This is a civil action by the widow of Purdom to recover of appellant on a policy of insurance issued on Purdom's life. In such a case the judgment of an examining court acquitting the man who killed him, cannot be regarded as evidence tending to sustain the defense that Purdom was himself the aggressor, and, therefore, when killed, was violating the law of the State.

During the cross-examination of appellee, she was

asked if she had not signed a certain affidavit before Squire Gholson, made for the purpose of securing a peace warrant against her husband. This she denied. Squire Gholson was then put upon the stand, and he testified to the fact that appellee did sign the affidavit. Counsel for appellant then offered the affidavit in evidence, but the court declined to permit it to go to the jury. Counsel insist that this evidence should have been received. As the affidavit, however, was made two days before the homicide, and contains nothing tending to show decedent's state of mind towards Thompson, we think it was properly excluded.

Judgment reversed and cause remanded for a new trial consistent with this opinion.