## EMPLOYERS' INDEMNITY CORPORATION v. GRANT.

(Circuit Court of Appeals, Sixth Circuit.   March 15, 1921.)

No. 3492.

1. **Appeal and error** ⬅➡930(1)—**Evidence conflicting with that favorable to verdict must be disregarded.**

   In determining on writ of error whether the death of insured was accidental within the policy, the evidence which conflicts with that favorable to plaintiff, for whom the jury rendered its verdict, must be disregarded.

2. **Insurance** ⬅➡455—**Death intentionally caused by another is accidental, if insured had no reason to anticipate it.**

   Where a railway conductor armed himself to scare a passenger out of a toilet, from which he had refused to come on the conductor's orders, and was shot and killed by the passenger before he had time even to threaten with his gun, his death was accidental, within an accident insurance policy, if he had no reason to anticipate that the passenger was armed, or that his action would tend to provoke a fatal encounter.

3. **Insurance** ⬅➡668(11)—**Whether killing by another was accidental is for jury, where evidence is conflicting.**

   Where insured was intentionally killed by another, and it is necessary to determine from conflicting evidence whether deceased by his wrongful conduct produced his death, or voluntarily and intentionally committed acts from which he foresaw or should have foreseen that death or injury might result, the issue whether the death was accidental must be submitted to the jury.

4. **Insurance** ⬅➡668(11)—**Evidence held to require submitting to jury whether killing was accidental.**

   In an action on an accident insurance policy to recover for the death of a railway conductor, who was killed by a passenger whom he had ordered out of a compartment, conflicting evidence as to the circumstances preceding the shooting *held* to require submission to the jury of the issue whether the conductor had reason to believe that his act would provoke an encounter which might result in his death.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by Myrtle Grant against the Employers' Indemnity Corporation.  Judgment for plaintiff, and defendant brings error.  Affirmed.

H. I. Armstrong, of Detroit, Mich. (Sibley, Armstrong, McNair & Mead, of·Detroit, Mich., on the brief), for plaintiff in error.

Frank T. Lodge, of Detroit, Mich. (Lodge & Brown, of Detroit, Mich., on the brief), for defendant in error.

Before KNAPPEN and DONAHUE, Circuit Judges, and WESTENHAVER, District Judge.

WESTENHAVER, District Judge.   This action is based on a policy of accident insurance issued October 31, 1917, to Alexander Grant, by occupation a passenger conductor on the Wabash Railroad, whereby the plaintiff in error insured Grant "against loss resulting directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means."  The insured having met his death while the policy was in force, Myrtle Grant, the beneficiary, brought this action and recovered judgment for the full

amount of the policy. This error proceeding is prosecuted by the insurer to reverse that judgment. The main ground relied on for reversal is that the insured's death was not accidental within the true meaning of the policy. This question was raised by a motion for a directed verdict and by numerous requests to charge, and is preserved by several of the assignments of error. The disposition of it requires a brief statement of the evidence.

The insured, while on duty as a passenger conductor, was on June 12, 1918, shot and killed by a colored passenger, James Morgan, at Montpelier, Ohio, a junction and terminal point of the Wabash Railroad. A few minutes before reaching Montpelier, Morgan, who had boarded the train at Chicago with a ticket entitling him to travel to Adrian, Mich., had entered the toilet room and had locked the door on the inside. The conductor's duty, as evidenced by bulletins and rules offered in evidence, required him, while this train was lying at Montpelier, to see that the toilet room was closed, locked, and kept out of use. What happened thereafter depends on the testimony of three witnesses—Albert H. Doyle, an express messenger, Frank Anderson, a colored news agent, and James Morgan, the man who did the killing, and whose deposition was taken after he had been tried, found guilty of first degree murder, and sentenced to be electrocuted. This evidence, viewing it, as is our duty, in that aspect tending most favorably to support the verdict, tends to show these facts:

The conductor, shortly after the train came to a stop, tried the toilet room door, and, finding it occupied and locked on the inside, requested, directed, and finally ordered, Morgan to unlock the door and come out. Morgan answered some three or four times that he could not do so, notwithstanding the conductor repeatedly instructed him that all he had to do was to shove back the bolt and open the door. This conversation was exchanged in an ordinary manner and without any threats of violence or display of anger on either side. Morgan, for some unknown reason, was evidently unwilling to comply with the conductor's order and vacate the toilet, and the conductor evidently interpreted his conduct and replies as a refusal so to do. At some time in the course of this controversy, if such it be, the conductor had stood on the arm and back of the car seat next to the toilet room and had looked in over its glass top. What the conductor saw he related to no one. Morgan, however, says that he was then buttoning up his "pants," and that his revolver was in a small handbag which he had with him. Anderson, the news agent, saw Grant try the door, but does not relate, even if he heard, the remarks then exchanged. At some time, probably after Grant had left, Anderson also got on the arms of the car seat and looked in at which time he says Morgan was standing on the toilet seat in such an unusual position and attitude that he quickly jumped down. He saw, however, no revolver in Morgan's possession.

Grant left, and there is some discrepancy as to the space of time which elapsed before his return. He went to the express car, got a loaded revolver, and returned, followed by Doyle, the express messenger. In answer to some remarks, Grant said: "Well, I want to scare

him out." Upon returning, he got up again on the arms of the car seat, holding by his left hand to an air valve at the side of the car, and, holding the revolver with his right hand clasped around the cylinder, displaying both ends of it, he tapped lightly on the glass top of the toilet, saying, "Come out of here." At approximately the same time, and as soon as his head appeared above the wooden side of the toilet room, a pistol shot sounded, and Grant fell dead to the floor. This shot was fired by Morgan. The bullet entered Grant's forehead just above and slightly to one side of the base of the nose.

[1] A jury would be warranted in finding that the tapping, order, or request, and the appearance of Grant's head above the wooden side of the toilet room, were substantially simultaneous with the firing of the shot, and that Grant had no knowledge that Morgan was armed, or, except as may be inferred from this statement of the evidence, was intending violence. All the testimony tends to show that Grant was in good humor and unexcited, and was not discourteous or violent, or threatening in speech or manner. Morgan's testimony and counsel's inferences, so far as they conflict, if at all, with the foregoing statement of the evidence, must in this proceeding be disregarded.

The trial judge submitted to the jury the issue as to whether Grant's death was due to accidental means. In doing so, he charged the jury in substance that they should approach this question from the standpoint of Grant at the time and under the circumstances as they appeared to him; that his death was not accidental, or covered by the policy, if Grant anticipated, or, under the circumstances, should have anticipated, the fact that Morgan might act in the way he did; and that the burden of proof was upon the beneficiary to show that Grant's death was caused by an agency which, independently of all other causes, constituted an accident; but that, on the other hand, if Grant did not anticipate, or have reason to anticipate, in the light of all the circumstances, that he would get shot, then his death was accidental, and the beneficiary might recover.

[2] In submitting to the jury upon this evidence the issue as to whether Grant's death was accidental, and in thus charging, we perceive no error against the insurer. Policies of accident insurance, indemnifying against death from external, violent, and accidental means, either with or without restrictive or defining language as to what is or is not accidental means, have often been considered by the courts. The law is well settled as to what is or is not accidental means within the meaning of a policy thus phrased; indeed, we discover no inconsistency or conflict in the cases, either in the statement of the law or in the application of the law to the facts of the different cases. And because of this settled state of the law, and the absence of any conflict in the cases, we do not deem it necessary to review the cases or to restate the general principles as to what is or is not accidental within the language of an accident insurance policy. It will be sufficient to refer to a few of the leading cases. See U. S. Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60; Western Commercial Travelers' Ass'n v. Smith (8 C. C. A.) 85 Fed. 401, 29 C.

C. A. 223, 40 L. R. A. 653; Hutchcraft's Ex'r v. Insurance Co., 87 Ky. 300, 8 S. W. 570, 12 Am. St. Rep. 484.

In some cases, however, the insured met his death, as the result of an intentional and designed killing of some third person, and if such killing was not the direct result of misconduct of the deceased, or was unforeseen and not reasonably to be anticipated by him, then his death is held to be the result of external, violent, and accidental means. For cases so holding, see the following: Robinson v. U. S. Mut. Accident Ass'n (C. C.) 68 Fed. 825, affirmed on another ground 74 Fed. 10, 20 C. C. A. 262; Railway Mail Ass'n v. Moseley (6 C. C. A.) 211 Fed. 1, 127 C. C. A. 427; Utter v. Travelers' Ins. Co., 65 Mich. 545, 32 N. W. 812, 8 Am. St. Rep. 913; Furbush v. Maryland Casualty Co., 131 Mich. 234, 91 N. W. 135, 100 Am. St. Rep. 605; on second appeal 133 Mich. 483, 95 N. W. 55; Hutchcraft's Ex'r v. Insurance Co., 87 Ky. 300, 8 S. W. 570, 12 Am. St. Rep. 484; Richards v. Travelers' Ins. Co., 89 Cal. 170, 26 Pac. 762, 23 Am. St. Rep. 455; Insurance Co. v. Bennett, 90 Tenn. 256, 16 S. W. 723, 25 Am. St. Rep. 685; Ripley v. Railway Passengers' Assurance Co., 2 Bigelow, Ins. Rep. 738, Fed. Cas. No. 11,854; Lovelace v. Travelers' Protective Ass'n, 126 Mo. 104, 28 S. W. 877, 30 L. R. A. 209, 47 Am. St. Rep. 638. Of these cases, the one last cited may be taken as typical. Lovelace, the insured, attempted to eject a man, who was drunken and boisterous, from the office of a hotel. In doing so, and in overcoming resistance, he used no other means than his hands, and while engaged in the effort the other drew a pistol and shot him, causing death. A recovery on the ground that the death was accidental was sustained, because Lovelace neither used nor attempted to use other than natural, physical means to eject by force, and while so doing did not know, nor have reason to believe, that the other person was armed.

There is another group of cases, on which the plaintiff in error mainly relies, in which the assured was killed by a third person, where recovery is not allowed; but in all these cases the deceased engaged in an encounter under such circumstances that he invited his adversary to mortal combat, and either foresaw or should have foreseen that death or injury might result. See Taliaferro v. Travelers' Protective Ass'n (8 C. C. A.) 80 Fed. 368, 25 C. C. A. 494; Hutton v. State's Accident Ins. Co., 267 Ill. 267, 108 N. E. 296, L. R. A. 1915E, 127, Ann. Cas. 1916C. 577; Meister v. General Accident, Fire & Life Ins. Co., 92 Or. 96, 179 Pac. 913, 4 A. L. R. 718. Of these cases Taliaferro v. Travelers' Protective Ass'n may be taken as typical. The deceased had drawn a revolver and had struck his adversary in the face before the latter drew his revolver and fired, and it was held that the insured's death was not accidental, because he foresaw or should have foreseen that death or injury might probably result from his own conduct. Other cases in which death was due, not to intentional killing, but to other causes alleged to be accidental, are cited and relied on, particularly Fidelity & Casualty Co. v. Stacey's Executors (4 C. C. A.) 143 Fed. 271, 74 C. C. A. 409, 5 L. R. A. (N. S.) 657, 6 Ann. Cas. 955, and Maryland Casualty Co. v. Spitz (3 C. C. A.) 246 Fed. 817, 159

C. C. A. 119, L. R. A. 1918C, 1191. No criticism can be made of the law stated therein or the judgments rendered; but they are not in point, and are sufficiently distinguished by reference to U. S. Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60.

[3] Obviously, in applying these legal principles, many cases of intentional and designed killing will arise, in which it will become necessary · to determine from conflicting evidence whether the deceased, by his wrongful conduct, produced his death or voluntarily and intentionally committed acts from which he foresaw or should have foreseen that death or injury might result. In all such cases the issue must be submitted to a jury under a proper charge. This course was pursued in the following cases: Furbush v. Maryland Casualty Co., 131 Mich. 234, 91 N. W. 135, 100 Am. St. Rep. 605; Utter v. Travelers' Ins. Co., 65 Mich. 545, 32 N. W. 812, 8 Am. St. Rep. 913; Railway Mail Ass'n v. Moseley (6 C. C. A.) 211 Fed. 1, 127 C. C. A. 427. The same course was followed, when the issue was as to whether the death was accidental, in the following cases: U. S. Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60; Insurance Co. v. Patterson (3 C. C. A.) 213 Fed. 597, 130 C. C. A. 175.

[4] In the case at bar it is plain that the court below could not say, as a matter of law, that Grant's death was not accidental, and therefore no error results to the plaintiff in error from the fact that this issue was submitted to a jury under a proper charge.

Three other errors were relied on, namely, admission in evidence of various rules of the railroad and of the statutes of Ohio and Michigan relating to a conductor's duties and powers; permitting an amendment at the close of all the testimony, so as to avoid a technical variance between the declaration and the policy sued on; and misconduct of counsel in argument to the jury. No error is perceived in any of these rulings. The alleged errors are so unsubstantial as not to call for further comment.

The judgment of the court below is affirmed, with costs.