## SCALES v. HOME LIFE INS. CO.
### No. 8324.

Circuit Court of Appeals, Fifth Circuit.
April 14, 1937.

H. Talbot Odom and Braxton B. Provine, Jr., both of Greenwood, Miss., for appellant.

P. H. Eager, Jr., of Jackson, Miss., and Edward C. Brewer, of Clarksdale, Miss., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for accidental death benefits under a policy providing for payment if death resulted from bodily injury, "effected solely through external, violent and accidental means * * * and resulted directly and exclusively therefrom, independently of all other causes." The claim was that Robert Scales, deceased insured, had within the policy, suffered such a death by shooting, at the hands of Henry Jackson, a negro tenant on his plantation.

The defense was (1) that the death was not accidental, and (2) that whether it was or not, it came under the proviso that "the Company shall in no event incur any liability hereunder if death shall result, accidentally or otherwise, directly or indirectly from * * * violation of law by the insured * * * performance of any form of police duty."

Defendant noticed, under the general issue plea, that, if required to do so, it would show that Mr. Scales, in violation of the laws of Mississippi, in an unlawful endeavor to take Henry Jackson's pistol from him, had entered Jackson's house armed with a pistol, either concealed or drawn, and in the encounter thus provoked had lost his life.

Plaintiff's counternotice under the general issue was that on the morning that Mr. Scales died, he was informed that one of his tenants, Jackson, in violation of one of the rules in force on the plantation, had in his possession a pistol which he had exhibited on several occasions in the presence of other tenants; that such conduct could not be overlooked because of its demoralizing influence on the other tenants. *That in handling similar situations it was customary for the owner or manager to handle such matters personally, and not to call in officers of the law.* (Italics supplied.) That on the occasion in question Mr. Scales, in the performance of his duty, undertook to investigate the report and, if true, to obtain possession of the pistol. That he had had no previous trouble with Jackson, and could not have reasonably anticipated that in the performance of this duty, he would be placing his life in danger. That he found Jackson in the house of another tenant, requested him to come out into the road, asked him about his having a pistol and requested that it be turned over to him. That Jackson agreed, and they went into his house together, and, after entering the back room of the house, Jackson unexpectedly made an unjustified attack upon Mr. Scales, whereupon, in defense of his life, he shot Jackson with a pistol, and in the struggle which followed, the pistol, in Mr. Scales' hand, was accidentally discharged, mortally wounding him.

Plaintiff for its evidence in chief proved by a physician that he had examined Mr. Scales while his body was still warm, and that his death had resulted from a wound made by a bullet. Cross-examined, he identified the proof of death form on the back of which was written—"Deceased had an altercation with negro—shot negro three times with pistol—negro took deceased's pistol away from him and killed him —dead when I got there."

On redirect, witness stated that he knew nothing of the facts except that death was the result of the gunshot wound. Plaintiff then offered the policy, and rested.

Defendant proved by undisputed evidence, that death was the result of an encounter and affray in which both men were killed. This proof showed that upon complaint to deceased that Jackson had a pistol, and that there might be trouble on account of it, deceased took his own pistol, oiled it, cleaned it, fired it once or twice to see that it would work, and set off to take Jackson's pistol from him. That he found Jackson in the house of one of his tenants, and asked him to come out. That he and Jackson then went to Jackson's house, and together entered Jackson's bedroom and closed the door, and almost immediately the fatal shooting occurred, in which both men were killed.

Plaintiff did not take the initiative again to show just how the death occurred. She confined her rebuttal testimony to an effort to contradict and impeach the testimony of Lizzie Fox, the only eye and ear witness, by declarations and statements claimed to have been made by her to officers and to a negro tenant, differing from the testimony she gave on the trial. Plaintiff placed her reliance upon the claim that Lizzie Fox's testimony was sufficiently impeached under the rule of the Sargent Case (Mutual Life Ins. Co. v. Sargent) (C.C.A.) 51 F.(2d) 4, 5, and the Floyd

Case (General American Life Ins. Co. v. Floyd (C.C.A.) 84 F.(2d) 35, to take the case to the jury.

The District Judge, at the conclusion of the evidence, instructed a verdict on the ground that Scales had come to his death by a violation of law, and as a result of a difficulty which he himself had provoked, in that, armed with a pistol, and for the purpose of taking Jackson's pistol from him by force, if necessary, he had entered Jackson's house and bedroom to take it. That his death, whether it be deemed accidental or deliberately contrived, or as resulting directly or indirectly, had occurred within the policy's proviso, as the result of his violating the law.

The two main witnesses for defendant were Nichols, whose testimony was in no manner contradicted by witness or circumstance and Lizzie Fox, against whom impeaching testimony was offered.

Nichols' testimony was that Mr. Scales told him that Henry Fox, in whose house Jackson lived, had told him about Jackson's having a pistol, and had asked Mr. Scales to take the pistol away from Jackson in order to keep down trouble. That Mr. Scales, after telling witness about his conversation with Henry Fox, went to his house, got his .38 pistol which he tried and found to be rusty, and then sent witness after his .45 pistol. That witness oiled the .38 pistol and Mr. Scales tested it to see if it would work by firing it once or twice. That Mr. Scales decided to go down and see if he could take the pistol away from Jackson, stating that he did not think he would have any trouble. That witness wanted to go with Mr. Scales but Mr. Scales insisted that he did not think there would be any trouble, and told him if he wanted to he could follow him down the road on his horse, which he did. While he was waiting in front of the Mose Calvin house, he heard the report of a pistol in the direction of the Henry Jackson or Henry Fox house, which was 3 or 4 hundred yards away. That he whipped up his horse and hurried toward the Fox house, went on into the house and into the back room, where he found Mr. Scales lying on the floor alongside the bed, mortally wounded and unconscious. That after hearing the shots he saw Henry Jackson run out of the house and into the next tenant's house, where he found him under the bed, that he later died, and the only statement he made was that he was "all shot up."

Jackson was about 6 feet tall, weighing about 170 or 175 pounds, and Mr. Scales was about 5 feet 10 inches tall, weighing about 160 pounds.

On cross-examination he testified that Jackson had been one of Mr. Scales' favorite negroes; that he used him as yard boy, to drive his automobile, and other such jobs. That Jackson had always appeared to be a willing negro and did anything requested of him. That Mr. Scales, on the morning of his death, prior to going down to see Jackson, discussed the matter with witness and stated he did not think there was any danger in going down and getting the gun; that he did not think he would have any trouble for the reason that Jackson had always been a good negro.

Lizzie Fox testified that Jackson and Mr. Scales came down the road to the house, Mr. Scales cursing Jackson, and Jackson saying that he would not give up his pistol; that it was his and he would die and go to hell before he gave it up. That Mr. Scales, cursing him and at the point of his pistol, had forced Jackson to go into the house and into his bedroom, and to shut the door, and there the violent quarrel soon resulted in the shooting. Plaintiff sought to impeach her testimony by the fact that, when first questioned by officers after the shooting, she had not told any of this, but had said in substance merely that Mr. Scales and Jackson had come into the house and into the back room together and that the door had then been shut.

We think it may not be doubted that the District Judge was right in instructing a verdict for the reason that he gave. We think it plain, too, that the verdict should have been instructed on the ground that plaintiff failed to discharge the burden the policy imposed on her, of proving that the death was accidental.

Appellant's brief earnestly argues, and cites authorities as supporting, the proposition that whether the death was accidental was, under the evidence, for the jury to say. It invokes our cases, Mutual Life Ins. Co. v. Sargent and General American Life Ins. Co. v. Floyd, supra; Ætna Life Ins. Co. v. Hagemyer, 53 F. (2d) 636; Ætna Life Ins. Co. v. Gallaway, 45 F.(2d) 391, and Smith v. New York Life Ins. Co., 31 F.(2d) 281, as authority that the evidence made a jury issue as to whether the death was accidental; that is, as to whether from what Mr. Scales undertook to do, it ought reasonably to

have been anticipated that death, or some serious bodily harm, would likely ensue.

These cases do not, we think, support that view. They make it plain, the Sargent Case does particularly, that when the proof, as here, shows that there was an affray the plaintiff must "take the initiative again and show by other evidence that the death was accidental."

In the Sargent Case it is said: "This can be accomplished by showing that the insured was not the aggressor or if he was the aggressor, that he could not in the circumstances reasonably have anticipated that he would be killed."

Defendant proved by Lizzie Fox that the deceased was the aggressor in a violent and unprovoked way under conditions from which a fatal killing should certainly have been anticipated. Plaintiff offered no evidence in disproof, but only in impeachment of this testimony, leaving the record wholly without evidence on her part as to the actual origin, course, and progress of the fatal quarrel. If then, as appellant insists, a jury could and would disregard Lizzie Fox's testimony, appellant would find herself in no better situation, for, putting that testimony entirely aside, there is still the undisputed evidence that Scales, in violation of law, went thoroughly armed and provided against all eventualities to Jackson's house and followed him into it, determined to take his pistol away.

The record standing thus, and no explanation by plaintiff as to the cause and course of the affray, plaintiff finds herself obligated to show, but not showing, that the death was accidental within the policy terms.

Plaintiff's case is ruled by the principles announced in Travelers' Ins. Co. v. Wilkes (C.C.A.) 76 F.(2d) 701; Fidelity & Casualty Co. v. Driver (C.C.A.) 79 F.(2d) 713; Boggan v. Provident Life & Accident Ins. Co. (C.C.A.) 79 F.(2d) 721, and in the Sargent Case, supra.

"In suits on accident policies insuring against the risk of death from external, violent, and accidental causes mere proof of death will not suffice. Plaintiff must prove, too, that the death was accidental. The true rule * * * is that where plaintiff's proof shows a violent death and does not show it to have been self-inflicted, his case is prima facie made out, because suicide will not be presumed." Boggan v. Provident Life & Accident Ins. Co. (C.C.A.) 79 F.(2d) 721, 723.

If, however, as here, the evidence shows not merely a death by shooting, but "that the death occurred as the result of * * * an encounter, then it is incumbent upon the [plaintiff] to take the initiative again and show by other evidence that the death was accidental." Mutual Life Ins. Co. v. Sargent, supra. The needed evidence is wholly wanting here.

It is equally, if not more, clear that the policy proviso against death while violating the law, or doing police duty, prevents recovery. This expressly excludes liability for death occurring while the insured is doing either. All the evidence shows that he was engaged both in doing police duty and in doing it in violation of law, and that his death resulted therefrom. The record leaves in no doubt that the instruction was properly granted (1) because plaintiff wholly failed to prove that his death was accidental within the policy terms, and (2) because, upon the undisputed proof, deceased was engaged in, and was killed as a result of, activities expressly excluded from the policy coverage.

The judgment is affirmed.