**NEW YORK LIFE INS. CO. v. MUR-DAUGH.**

No. 4263.

Circuit Court of Appeals, Fourth Circuit.

Jan. 11, 1938.

Pinckney L. Cain, of Columbia, S. C. (Thomas, Lumpkin & Cain, of Columbia, S. C., on the brief), for appellant.

W. Brantley Harvey, of Beaufort, S. C., for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

In 1929 the New York Life Insurance Company, the appellant in this case, issued two policies of life insurance to Le Roy B. Tuten, each for the payment of five thousand dollars ($5,000) upon his death, and each also containing the double indemnity clause providing for the payment of an additional sum of five thousand dollars ($5,000) "upon receipt of due proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within 90 days after such injury". On July 4, 1935, while the policies were in full force and effect, Tuten was shot and killed in the town of Brunson, South Carolina, by T. J. Nix. Promptly thereafter the Insurance Company paid to the insured's administrator as beneficiary under the policies, the sum of ten thousand dollars ($10,000) representing the single indemnity under both policies; but refused to pay the double indemnity under either policy on the ground that the death of the

insured was not accidental within the meaning of the policy provision but resulted from "the insured's committing an assault or felony", which was within the exclusion from liability contained in the policy provision that "double indemnity shall not be payable if the insured's death resulted * * * from committing an assault or felony". In the ensuing suit on the policies by the administrator, originally brought in the State Court and removed to the United States District Court, the plaintiff recovered a judgment for the amount in controversy, $10,000, with interest. From this judgment the insurer has appealed.

In the course of the trial the plaintiff, in addition to proving formal matters not really in controversy, submitted only the testimony of a physician to the effect that the insured had been shot and killed on a public street in the Town of Brunson, South Carolina, on the afternoon of July 4, 1935, and that an examination of the body showed that it had been completely pierced by four bullets, two entering the chest in front, and two in the back. Thereupon the plaintiff rested its prima facie case; and the defendant filed a motion for non suit on the ground that the plaintiff's proof did not show an accidental death. The defendant excepted to the overruling of this motion by the District Judge and has included the ruling in its assignments of error. The question of law thereby presented is whether, in a suit on an accident policy, the plaintiff makes out a good prima facie case by proof that the death of the insured was due to pistol shots inflicted by another person. To constitute a proper claim upon the policy it must be shown that death was caused solely through "external, violent and accidental means". It is conceded that the plaintiff's proof in his prima facie case established that the death was due to external and violent means, but it is said that it did not show that the means were accidental. The weight of authority is, however, to the contrary. On this point the applicable law has been well summarized by Circuit Judge Hutcheson, speaking for the Circuit Court of Appeals for the 5th Circuit, in Mutual Life Ins. Co. v. Sargent, 51 F.2d 4, 5, as follows:

"Upon the matter of proof it is the law, though there are one or two authorities contra (New York Life Ins. Co. v. Ollich (C.C.A.) 42 F.(2d) 399, 401), that while the burden is upon plaintiff in cases of this

kind to prove death resulting from external, violent and accidental means, proof without more that insured was killed by another raises the presumption that death was accidental, and makes out a prima facie case in the absence of evidence to the contrary. Smith v. New York Life Ins. Co. (C.C.A.) 31 F.(2d) 281; Nerrow v. Pacific Mutual Life Ins. Co. (Mo.App.) 294 S.W. 97, 99; Withers v. Pacific Mutual Life Ins. Co., 58 Mont. 485, 193 P. 566; Aetna Ins. Co. v. Rustin, 151 Ky. 103, 151 S.W. 366; Jones v. U. S. Mutual Acc. Ass'n, 92 Iowa 652, 61 N.W. 485; Aetna Life Ins. Co. v. Little, 146 Ark. 70, 225 S.W. 298."

See, also, Aetna Life Ins. Co. v. Hagemyer, 5 Cir., 53 F.2d 636, certiorari denied 285 U.S. 542, 52 S.Ct. 314, 76 L.Ed. 934; Boggan v. Provident L. & A. Ins. Co., 5 Cir., 79 F.2d 721, 723; Scales v. Home Life Ins. Co., 5 Cir., 89 F.2d 580, 583; Massachusetts Bonding & Ins. Co. v. Santee, 9 Cir., 62 F.2d 724; Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 103 A.L.R. 171; Linnen v. Commercial Cas. Co., 152 S.C. 450, 150 S.E. 127; Martin v. Mutual Insurance Co., 106 W.Va. 533, 540, 146 S.E. 53; 1 C.J. 495. Furthermore it is well settled that the defendant's exception to the ruling was waived by the introduction of evidence thereafter on its own behalf in support of its affirmative contention that the insured's death resulted from the commission of an assault. Union Pac. Ry. Co. v. Daniels, 152 U.S. 684, 14 S.Ct. 756, 38 L.Ed. 597; Sigafus v. Porter, 179 U.S. 116, 121, 21 S.Ct. 34, 45 L.Ed. 113; Atlantic C. L. Ry. Co. v. Connor, 4 Cir., 194 F. 409; McCrary Engineering Co. v. White Coal Power Co., 4 Cir., 35 F.2d 142, 143.

The appellant's principal contention here is that the district judge should have granted the motion for a directed verdict in its favor upon the conclusion of all the testimony in the case; but after a study of the record we are satisfied that the question of fact whether the insured's death was accidental within the meaning of the policy or resulted from an assault committed by him was properly submitted to the jury. On this controlling issue in the case the testimony was conflicting. There were two versions of exactly what occurred between Nix and Tuten, the insured, immediately prior to the fatal shooting. Certain facts, however, appear in both accounts of the matter. Thus it appears without contradiction that Nix was a local magistrate. He and Tuten had long been friends, or at least acquaintances, but shortly before the fatal encounter there had arisen bad feeling between them apparently owing to some official action taken by Nix against a tenant of Tuten. Shortly before the fatal shooting Tuten met Nix on the main street of Brunson, and there was some angry conversation between them during which it appears that Nix accused Tuten of having recently cursed him and quoted one Dowling who lived nearby as his informer. Thereupon Tuten said that he would go to see Dowling to inquire about the matter and would return. Tuten then drove off in his automobile toward Dowling's residence and shortly returned and again met Nix on the same street, at which time the fatal shooting occurred. Promptly thereafter a search of Tuten's body and automobile failed to disclose that he had been armed with a pistol or any other weapon.

The crux of the controversy on the facts was with regard to precisely what occurred at the time of this later meeting. The only evidence of this offered by the defendant was the testimony of Nix, the substance of which was that when Tuten drove away from the first meeting he said to Nix "I will settle with you when I come back any way you want to settle it"; that in a few minutes Tuten drove back, got out of his car, took about three steps toward Nix saying that he was ready to settle with him "any way you want to settle it", and at the same time reached his hand in his shirt, being without a coat; that Nix thought Tuten was reaching for his pistol, as he knew that Tuten habitually carried a pistol and had the reputation of being a man of violent and turbulent temperament, and that Tuten had previously made threats against him; and thereupon in self defense Nix fired three shots into Tuten's body. Nix was corroborated in part at least with respect to the matter of Tuten's general reputation and his threats against Nix by some other witnesses. On the other hand, in rebuttal for the plaintiff, two eye witnesses of the occurrence at the fatal meeting testified in substance that Tuten got out of his automobile, engaged in conversation with Nix for four or five minutes with his arms folded and leaning against the rear fender of his automobile, during which time he made no motion in any way to strike or assault Nix, and that Tuten had started to get back into his automobile, with his right hand on the handle of the door to open it, when he was shot by Nix.

These witnesses did not hear the whole of the conversation which immediately preceded the shooting, but one heard Tuten say as he started to get into his car "I will settle with you later", and the other heard Nix say immediately before he shot "I will have you to know that I am a magistrate of the law". The facts that Tuten was apparently unarmed and that he was shot four times, twice in the back and twice in the chest, were also relevant for the consideration of the jury in determining just what actually occurred.

On these conflicting accounts of the encounter between the two men it was clearly a question for the jury to determine whether Tuten's death was accidental or brought on by an assault by him on Nix. It is clear no blow passed between the two men before the shooting, but it is contended on behalf of the insurer that the alleged apparent effort of Tuten to draw a weapon, in connection with what had previously transpired between them, constituted an assault on Tuten's part; and under the charge to the jury by the district judge, to which no exception was taken, the jury were instructed in effect that if they so found their verdict should be for the defendant; but if the jury on the contrary found in accordance with the testimony for the plaintiff that Tuten, after the conversation, had started to leave without any overt act constituting an assault on his part, then their verdict should be for the plaintiff.

In our opinion the case was thus fairly submitted to the jury with proper instructions as to the law of the case. As the suit was on only that portion of the policies covering death by accident, the burden of persuasion was on the plaintiff to establish that the insured's death was accidental. Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 731, 103 A.L.R. 171. If the insured committed no act of attempted violence toward Nix, then it is clear that merely angry conversation between the two would not exempt the insurer from liability for death intentionally inflicted by Nix without the provocation of an assault; and of itself would not necessarily constitute such conduct on the part of Tuten that he should reasonably have anticipated the result that followed. The law applicable to this situation is succinctly stated in Mutual Life Ins. Co. v. Sargent, supra, as follows:

"That death is none the less accidental, within the terms of a policy like the one in suit, because of the fact that it results from the intentional act of another, if the insured is innocent of aggression or wrongdoing, or even if he is the aggressor, if he could not reasonably anticipate bodily injury resulting in death to himself at the hands of another. Occidental Life Ins. Co. v. Holcomb, (C.C.A.) 10 F.2d 125, 126. * * * In each case if there is any issue of fact as to how the matter occurred, and as to what ought to have reasonably been expected as likely to ensue, the matter is for the jury."

See, also, Norris v. New York Life Ins. Co., 4 Cir., 49 F.2d 62; General American Life Ins. Co. v. Floyd, 5 Cir., 84 F.2d 35, 37; Massachusetts Bonding & Ins. Co. v. Santee, supra; Employers' Indemnity Corporation v. Grant, 6 Cir., 271 F. 136, 20 A.L.R. 1118; Richards on Insurance, 4th Ed., p. 737; Couch Cyc. of Ins. Law, Vol. 5, § 1158.

The remaining assignments of error (with the exception of one to a part of the charge, as to which no exception was taken, and in which we find no error) relate only to questions of evidence. We have considered them all but find no reversible error therein. Only one is of sufficient importance to require mention. The defendant insurer, in support of its contention that the death of the insured resulted from his assault on Nix, offered in evidence the record of the criminal prosecution against Nix in the State Court for the unlawful homicide of Tuten. It was not received in evidence by the district judge but it is said by counsel that it would have shown an acquittal of Nix on the charge. The defendant does not dispute that it is generally the well settled rule of evidence that records in criminal cases are not admissible in evidence in civil cases although both grow out of the same facts. Chantangco v. Abaroa, 218 U.S. 476, 481, 31 S.Ct. 34, 54 L.Ed. 1116; Stone v. United States, 167 U.S. 178, 188, 17 S.Ct. 778, 42 L.Ed. 127; Cluff v. Mutual Ben. Life Ins. Co., 99 Mass. 317; Sovereign Camp v. Purdom, 147 Ky. 177, 143 S.W. 1021; Burt v. Union Cent. Life Ins. Co., 187 U.S. 362, 368, 23 S.Ct. 139, 47 L.Ed. 216; 31 A.L.R. 261; 57 A.L.R. 504; 80 A.L.R. 1145; Boston Univ. Law Review, vol. 12, p. 548.

The well known reason for this rule is that the parties are not the same and the measure of proof required is also different. In the instant case there is the further reason that the issues were not

identical. Assuming that the acquittal in the criminal case was based on the plea of self defense, the jury in that case had to consider the occurrences and judge the conduct of Nix by what they found to be the latter's bona fide understanding of Tuten's acts or gestures. But in the present civil case the jury were properly instructed by the district judge that they must decide the matter, not as it may have appeared to Nix, but on what they found to have been Tuten's real action; because the plaintiff was entitled to recover if in fact Tuten did not intend to commit an assault and made no overt effort to do so and if, therefore, from Tuten's point of view there was no reasonable anticipation on his part that what he did would be likely to bring on a fatal encounter. Robinson v. United States Mut. Acc. Ass'n, C.C., 68 F. 825, affirmed 8 Cir., 74 F. 10; Interstate Acc. Ass'n v. Lester, 8 Cir., 257 F. 225, 229, 230, certiorari denied 250 U.S. 662, 40 S.Ct. 11, 63 L.Ed. 1195.

It is true that the rigid rule of exclusion of judgments in criminal cases as evidence in civil cases involving the same facts has been relaxed in recent years by some courts in particular situations. Thus where a party to a civil case has previously been convicted in a criminal case of a crime relating to the same factual situation which is in issue in the civil case, it has sometimes been held that the record of his conviction is admissible against him, on the ground of estoppel or public policy. The case of Eagle, Star & British Dominions Ins. Co. v. Heller, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490, cited by the appellant here, is a case in point. There the plaintiff in a civil case was suing on a fire insurance policy when he had previously been convicted of the wilful burning of the insured property, and it was held the criminal record should have been admitted in evidence in the civil case on the ground of public policy. See, also, Schindler v. Royal Ins. Co., 258 N.Y. 310, 179 N.E. 711, 80 A.L.R. 1142, where a distinction is made in this respect between a judgment of conviction and one of acquittal. And in Osborne v. People's Beney. Ind. Life Ins. Co., 19 La. App. 667, 139 So. 733, also cited by the appellant, a case of a similar nature to the present, it was apparently indicated that the conviction of the plaintiff of a criminal assault was admissible in evidence against him in his suit on an accident policy where his injury had resulted from a personal encounter with a third person. See, also,

Diamond v. New York Life Ins. Co., 7 Cir., 50 F.2d 884; Wigmore on Ev. 1934 Supp. §§ 1671a and 1346; Boston Univ. Law Review, Vol. 12, p. 548; 80 A.L.R. 1147. But without now expressing any opinion as to the correctness of the rulings in the two cases cited by the appellant, it is obvious that they are distinguishable on their facts from the present case where the deceased insured was, of course, not a party to the criminal case and where his death has destroyed the possibility of his testimony in the civil case.

It results that the judgment appealed from must be affirmed.