## CENTRAL NAT. BANK OF CLEVELAND v. GENERAL AMERICAN LIFE INS. CO.

### No. 7826.

Circuit Court of Appeals, Sixth Circuit.

May 10, 1939.

Marvin Harrison, of Cleveland, Ohio (Harrison & Marshman, of Cleveland, Ohio, on the brief), for appellant.

---

Robert H. Jamison, of Cleveland, Ohio (Robert H. Jamison and Robert F. Lee, both of Cleveland, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

Appeal by a trustee beneficiary of a life insurance policy from an order of the District Court directing a verdict in favor of the insurer and holding it not liable under a double indemnity provision of the policy. The face amount of the policy has been paid. The insured, Edwin G. Thompson, was shot and killed near Albuquerque, New Mexico, on August 23, 1935, by Bryson Corbett. The insurer refused to pay the double indemnity benefits provided under the policy, claiming that the death did not fall within the class of accidents covered thereby.

The principal question is whether there is substantial evidence requiring the submission of the case to the jury. The District Court considered that the evidence clearly showed that Thompson's death did not result from accidental means. The policy provides that in order that liability under the double indemnity clause shall arise, the death of the insured must "result independently and exclusively of all other causes from bodily injuries effected directly from external, violent and accidental means." The death was caused by external and violent means, but the insurer claims that at the time of his fatal encounter with Corbett the insured knew, or had reasonable grounds to anticipate, that he was going into physical danger, or that his own misconduct caused his death.

■ An injury of this kind is not considered accidental where the insured calls forth the assault upon himself by his own wrongful act, or where, under such circumstances that he would naturally be presumed to know that the injury is likely to be inflicted, he voluntarily incurs an obvious hazard of this character, or places himself in a position where it may be reasonably expected that he will be assaulted. Occidental Life Ins. Co. v. Holcomb, 5 Cir., 10 F.2d 125; Isoard v. Mutual Life Ins. Co. of N. Y., 8 Cir., 22 F.2d 956; Taliaferro v. Travelers' Protective Ass'n of America, 8 Cir., 80 F. 368; McCrary v. New York Life Ins. Co., 8 Cir., 84 F.2d 790.

■ Conversely, where the insured is intentionally injured by another and the injury is not the result of misconduct or an aggression by the insured, but is unforeseen insofar as he is concerned, the injury is accidental within the meaning of the usual accident policy provision. Employers' Indemnity Corp. v. Grant, 6 Cir., 271 F. 136, 20 A.L.R. 1118; New York Life Ins. Co. v. Murdaugh, 4 Cir., 94 F.2d 104; Mutual Life Ins. Co. of N. Y. v. Sargent, 5 Cir., 51 F.2d 4.

The question, then, is whether this record contains substantial evidence that the shooting was not foreseen by Thompson, that it would not have been foreseen by a man of ordinary intelligence and prudence, and that Thompson was not the aggressor.

The testimony concerning the shooting necessarily is confined to Corbett's own statement, for Thompson was instantly killed; but the circumstances which led up to the shooting are illuminating.

Thompson, a former resident of Cleveland, Ohio, had been married to and divorced from Paula Thompson, who had secured a judgment for alimony upon which some $60,000 was due at the time of the shooting. An indictment for assault had been secured against Thompson in Cleveland by Paula Thompson, as the evidence indicates for the purpose of using it for extradition proceedings to force the payment of the alimony. Thompson had a ranch near Albuquerque and had lived there for some years under the name of Tex Thompson. He became acquainted with Corbett and his wife, and was infatuated with Mrs. Corbett, who was planning to secure a divorce from Corbett. Corbett and Thompson had engaged in one physical encounter in which Corbett, who had recently had tuberculosis and was lighter and considerably weaker than Thompson, had been badly beaten up by Thompson. Corbett had his lawyer send Thompson a letter which in light of the other evidence constituted a veiled threat to sue Thompson for alienation of affections. Corbett at the same time told Mrs. Corbett's father that he "had it over" Thompson; that Thompson "could not have a lawsuit or publicity and get his name in the paper,"

880

and he felt he "had it cinched." He also said that he was "going to have $10,000 or raise a lot of hell."

Thompson was told of these threats and was greatly concerned over them, for he feared extradition proceedings under the assault indictment if the story should be carried in the press. He endeavored to meet with Corbett and talk the matter over. Corbett refused to see him and told him that if he came out to see Corbett he would shoot him. Thompson in effect said that Corbett would not dare to shoot him. Mrs. Corbett, on learning of the conversation, urged Thompson to take a police officer with him if he went to see Corbett. Thompson said that that was not necessary, and that he would not argue or fight with Corbett, but he did go to the police station, where he was told to stay away from Corbett. He went alone and unarmed to see Corbett who had a room in the Telfer's house. A woman living next door to the Telfers saw Thompson walking in a "very normal way" down the street some ten feet from the entrance to the Telfers. Corbett says that Thompson ran up the steps, pulled the screen open, and closed the door. He states that Thompson came out there to "get" him. He also states that he shot before any words were spoken, although he knew that Thompson was unarmed. The bullet which killed Thompson entered the left shoulder on the upper side and came out under the right arm. Appellant contends that this indicated that he was shot from above, and not from a position facing Corbett. When found Thompson was lying on the porch of the house, with his feet toward the screen and but two or three feet inside the screen.

The case presents several questions of fact which required submission to the jury: (1) Whether Thompson went out to assault Corbett, or to have a peaceful talk with him over the threatened lawsuit; (2) whether he expected Corbett to shoot him; (3) whether a reasonable man under all of these circumstances would have expected to be shot. Mutual Life Ins. Co. of N. Y. v. Sargent, supra; Employers' Indemnity Corp. v. Grant, supra; New York Life Ins. Co. v. Murdaugh, supra. A jury might have found either that Thompson was or was not the aggressor, that Thompson was or was not aware of the danger, and that a reasonable man might or might not have anticipated the result.

The insurer contends also that under certain statutes of New Mexico Thompson clearly was the aggressor. The District Court made no finding upon this point and apparently did not consider it. No decisions of the courts of New Mexico are cited. If these statutes apply, this contention also presents a question of fact which should have been submitted to the jury.

The order is reversed and the case is remanded for further proceedings not inconsistent with this opinion.