### UNITED STATES v. BURNS et al.
#### Civ. No. 5243.

United States District Court
D. Maryland.
Feb. 13, 1952.

C. R. McKenrick, Asst. U. S. Atty., Baltimore, Md., for U. S.

J. Healy Sullivan, of Baltimore, Md., for Mrs. Monette Ritter Burns.

Maurice J. Pressman, of Baltimore, Md., for Helen Burns Huettner, as guardian of Patricia A. Burns.

COLEMAN, Chief Judge.

The Government has brought this suit as one in the nature of interpleader under Section 19 of the World War Veterans' Act of 1924, as amended, and Section 617 of the National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A. §§ 445 and 817, against two defendants who claim an interest in a certain policy of National Service Life Insurance issued by the Government to one Emmet T. Burns, a member of our armed forces.

The material facts respecting which there is no dispute are as follows: The insured, Emmet T. Burns, enlisted in the United States Navy on September 22nd, 1942, and was honorably discharged therefrom on September 22nd, 1945. While in the Navy the insured applied for and was issued a National Service Life Insurance policy for the sum of $5,000, effective November 1st, 1942, having designated a daughter, Patricia A. Burns, by his divorced wife, the sole beneficiary of this policy. On April 7th, 1944, the insured having remarried five months previously, changed the beneficiary by naming his second wife, Monette Ritter Burns, hereinafter referred to as Mrs. Burns, the principal beneficiary, and his daughter Patricia, above referred to, as the contingent beneficiary. On September 1st, 1944, there was issued to the insured an additional National Service Life Insurance policy also in the amount of $5,000, in which the insured named the same beneficiaries. On October 29th, 1945, the insured dropped $8,000 of the aforegoing insurance and converted the balance, namely, $2,000, into so-called thirty-pay life insurance for which a certificate was issued to the insured on November 1st, 1945. This policy was in force on March 6th, 1949, when the insured died as a result of gun shot wounds inflicted by Mrs. Burns. She was subsequently indicted in Baltimore County, Maryland, for the murder of her husband, to which she pleaded not guilty, was tried before a jury, and on April 21st, 1949, was found not guilty.

Claim to the aforementioned $2,000 life insurance was duly made upon the Veterans' Administration by Mrs. Burns, as principal beneficiary, but the Veterans' Administration, in its present petition, pleads its unwillingness to determine that Mrs. Burns is entitled to receive this insurance instead of the daughter of the insured, Patricia, who is named in the policy as contingent beneficiary and, therefore, prays that this Court determine the rights of the respective parties.

It is well settled as a general rule of evidence that records in criminal cases are not admissible in evidence in civil cases, although both arise from the same facts. New York Life Insurance Co. v. Murdaugh, 4 Cir., 94 F.2d 104. The reason for this is that the parties and also the measure of proof required are different, and the issues not identical. However, so much of the testimony in the criminal proceeding against Mrs. Burns as was preserved as a written transcript and also certain pre-trial statements of the accused, have been stipulated into the present case by agreement of all parties because of the difficulty if not impossibility of reproducing the same witnesses, but leaving to the determination of this Court the effect to be given in this proceeding to such evidence. Thus, there are presented to this Court for determination the two following questions: (1) Must the verdict of acquittal of Mrs. Burns in the State Court be treated as res adjudicata and therefore binding upon this Court; and (2) even though that verdict be not binding upon this Court, should Mrs. Burns be held entitled to the insurance as against the contingent beneficiary, in face of the fact that she caused the death of her husband?

As respects the first of these questions it is well settled that acquittal on a criminal charge is not res adjudicata in a subsequent civil action. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917; Murphy v. United States, 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446; Stone v. United States, 167 U.S. 178, 17 S.Ct. 778,

42 L.Ed. 127. See also New York Life Insurance Co. v. Murdaugh, supra. The same is true where there has been conviction and not acquittal of the criminal charge. Kusnir v. Pressed Steel Car Co., D.C., 201 F. 146; Metropolitan Life Insurance Co. v. McDavid, D.C., 39 F.Supp. 228.

 Turning now to the second question before the Court, namely, even though the acquittal of Mrs. Burns is not res adjudicata in the present proceeding, is she entitled to the insurance, an examination of the undisputed facts as disclosed by the record in the criminal case, and particularly by her own admissions therein, convinces us that the insurance should be paid to the contingent beneficiary and not to Mrs. Burns.

The evidence in the criminal case that has been stipulated into the present case consists, apart from certain police records and other documentary evidence, entirely of Mrs. Burns' own pre-trial statements and her testimony at the trial. This testimony is to the effect that for a period of some four months prior to killing her husband, the pair had been having marital difficulties and had been living apart. While thus estranged, during the evening of March 5th, 1949, Mrs. Burns met one Captain Daniel Lynch in a Baltimore night club. They spent the evening together, going to various places and arrived at her home about four-thirty a. m. March 6th. Mrs. Burns suggested that Captain Lynch, instead of returning to his hotel, remain in the guest room of her house. Upon her taking him to this room, they were suddenly confronted by her husband who had been waiting in hiding there. He immediately attacked Captain Lynch. A violent scuffle ensued between the two. Mr. Burns used no violence at that time against Mrs. Burns. The Captain went downstairs followed by Burns. Mrs. Burns remained upstairs. The Captain tried to leave by the front door but then came back upstairs, followed by Burns, and locked himself in the bathroom. Burns ordered him to come out, saying he would not hurt him. At this time Mrs. Burns stood in the hallway, trying to calm her husband. Then the Captain came out of the bathroom, went downstairs and was followed by both Mr. and Mrs. Burns. Burns then ordered both the Captain and his wife to leave the house, which they did. While outside, the Captain remonstrated with her not to go back into the house, saying that her husband was crazy. She replied "Well, you go on. I think everything will be all right." The husband then came out of the front door and forced Mrs. Burns back into the house where, in the livingroom, he violently attacked her and grabbed her by the back of her hair and slammed her up and down in a cushion on the sofa. When he finally relented somewhat in his attack upon her, Mrs. Burns ran upstairs to her bedroom and removed a loaded automatic pistol from her dresser drawer. She then came down again and at the foot of the stairs she and her husband had an argument over a joint savings account. He said "If you think I am afraid of that gun—go ahead and shoot me," and made a lunge at her. As he did so, she fired four shots in quick succession into his body. She then called the police who took the insured in an ambulance to a hospital where he died a few minutes after arrival.

From the aforegoing testimony, with respect to Mr. Burns' conduct, revolting as it is, it is nevertheless difficult to justify Mrs. Burns' killing her husband on the ground of self-defense as and when she did. He had not threatened her life on this or any other occasion insofar as the testimony stipulated into the present case discloses. He was not armed, and it does not appear that she had any reasonable ground to fear that he was or was likely to become armed when she ran upstairs, got her automatic pistol, came down and faced him with it. She might have remained upstairs. He did not follow her up. When she came down again with the pistol, he had put on his hat and coat. It is true he had been drinking as had she also, although there is no evidence that he was either intoxicated or insane.

In United States v. Kwasniewski, 91 F. Supp. 847, a quite recent decision of the District Court for the Eastern District of Michigan, Southern Division, the facts were quite similar to those now before us. That also was an interpleader suit,

brought by the United States against various claimants of an interest in a National Service Life Insurance policy issued by the Government to an enlisted man in the United States Army. There, the mother of the insured soldier had been named by him as principal, and his stepfather as contingent beneficiary. The latter killed the former, his wife, when he found her in a compromising position with another man. He was tried for murder, defended on the ground of temporary insanity, and was acquitted. In the interpleader suit the District Court held that the stepfather was not entitled to the proceeds of the policy, but that they should be paid to the natural sisters of the insured. The Court said, 91 F.Supp. 847 at pages 851–853:

"It is a fundamental rule of common law that no man shall be permitted to profit by his own wrongful act. Courts have consistently held that a beneficiary who intentionally and feloniously kills the insured is barred from claiming insurance proceeds on the life of the insured. The same principle applies to a case involving killing of a principal beneficiary by a contingent beneficiary. 46 C.J.S., Insurance, § 1171; Ohio State Life Insurance Co. v. Barron, 274 Mich. 22, 263 N.W. 786.

"It is claimed on behalf of Joseph Kwasniewski that he killed the principal beneficiary during a period of temporary insanity; that such killing was not intentional and felonious; that he was acquitted of the murder charge in the criminal proceeding, and hence is not barred from claiming the insurance funds. The fact that the person who would acquire property as a result of the death of the person killed has been acquitted of the killing does not prevent the application of the rule. Restatement of the Law, Restitution, Property Acquired on Death, Sec. 187, subds. e, f.

"The record of the criminal proceeding in which Joseph Kwasniewski was acquitted of the murder charge is not binding upon this court. Metropolitan Life Insurance Co. v. McDavid, D.C., 39 F.Supp. 228. Testimony was submitted in the present case relating to the circumstances which led to the death of Stella Yucha Kwasniewski. Although the jury found in the criminal proceeding that Joseph Kwasniewski killed his wife during a period of temporary insanity which warranted acquittal of the murder charge, it cannot be said, for the purposes of the instant suit, that the killing was not intentional and felonious.

\* \* \* \* \* \*

"Defendant Joseph Kwasniewski contends that the killing of his wife was unintentional, and that an unintentional killing would be exempt from the operation of the rule. A reading of the decisions cited herein and others leaves no doubt as to whether recovery would be allowed in cases of involuntary manslaughter where an unintentional killing resulted from the commission of an unlawful act not amounting to a felony or from gross negligence, or in cases where, although a felonious act was committed, and an intent to kill a person other than the insured was present, the killing of the insured was accidental. But the conclusion seems inescapable that the circumstances under which defendant Joseph Kwasniewski killed his wife would not constitute such unintentional killing as would exempt this case from the operation of the rule of public policy here stated.

"True, the circumstances of the killing were sufficiently extenuating to convince the jury that Joseph Kwasniewski should be acquitted in the criminal proceeding and should not be subjected to punishment by imprisonment, but the same reasoning would not apply in a civil suit in which he seeks benefits which would accrue to him only upon the death of the person for whose death he himself was responsible. At the time of the killing he was not acting in self-defense, he was not intoxicated, and, although he was under a mental and emotional strain caused by the misconduct of his wife, he was not an insane person. The killing was wrongful, unlawful, and even under the circumstances mentioned, neither justifiable nor excusable. And this court has reached the conclusion that it was also intentional in the sense that he felt an urge to punish and had taken revenge on his wife for her infidelity; it was a killing under circumstances which would bar his right to recovery of the insurance funds."

694

In Metropolitan Life Insurance Co. v. McDavid, supra, which was also a decision of the District Court for the Eastern District of Michigan, Northern Division, the insurance claimant named as principal beneficiary, was convicted of manslaughter in the killing of her husband, the insured. During an argument he had struck her with his hand on the side of her head, causing her nose to bleed. She became very angry and forthwith took a revolver out of her hand-bag and killed her husband. In denying the wife's claim to the insurance, the Court said, 39 F.Supp. 228, at page 232: "It is necessary to keep in mind that running through the adjudicated cases the real reason for not permitting recovery is that the beneficiary intentionally took the life of the insured and that the intentional act should not place the beneficiary in position to enjoy a benefit which would not have been enjoyed and could not have been enjoyed except for the wicked intentional killing. That manner of reasoning which has controlled these murder cases applies equally well to the case at bar, which is a manslaughter case, because here the beneficiary intentionally took the life of the insured." The Court, in addition to referring to many decisions, also refers to the Restatement of the American Law Institute on "Restitution" Section 189, and explains that whereas the rule is there very broadly laid down that if the beneficiary of a life insurance policy murders the insured, the murderer loses his interest in the policy, but that the opposite is true where the beneficiary is guilty only of manslaughter, the breadth of this distinction if taken literally, is apparently inaccurate because it fails to distinguish between cases of voluntary and involuntary manslaughter.

We believe the reasoning in both the Kwasniewski and McDavid decisions is entirely correct and directly applicable to the facts as presented in the present case. Neither of these decisions was appealed. We have been referred to no decisions to the contrary that contain any persuasive reasoning on similar facts. The Louisiana State court decisions on which counsel for Mrs. Burns relies, such as American National Life Insurance Company v. Shad-dinger, 205 La. 11, 16 So.2d 889, and National Life & Accident Insurance Co. v. Turner, La.App., 174 So. 646, are not persuasive. The facts therein are quite different.

Judgment must therefore be entered for Helen Burns Huettner, as guardian of Patricia A. Burns, a minor, and contingent beneficiary under the policy in suit.