**Jeffrey Dwayne MOUNTS, Individually and as Administrator of the Estate of David Nathaniel Mounts, deceased, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. 92–291.

United States District Court,
E.D. Kentucky,
at Lexington.

Nov. 5, 1993.

Guy K. Duerson, Duerson & Duerson, Berea, KY, for plaintiffs.

Marianna Clay, U.S. Attorney's Office, Lexington, KY, Robert M. Connolly, Stites & Harbison, Louisville, KY, David M. Holtzer, Metropolitan Life Ins. Co., Law Dept., New York City, for defendants.

Linda Mounts, pro se.

## MEMORANDUM OPINION

FORESTER, District Judge.

### I. INTRODUCTION

Plaintiffs, Jeffrey Dwayne Mounts, Harold Scott Mounts, and William Steve Mounts, are the children of the decedent, David Nathaniel Mounts, who was employed as a supervisory engineering technician at the Bluegrass Army Depot in Lexington, Fayette County, Kentucky, at the time of his death on or about September 22, 1990. As an employee of the United States, the decedent had the opportunity to obtain basic life insurance coverage under the Federal Employees Group Life Insurance Act ("FEGLIA"). Plaintiffs allege that the decedent elected to obtain this insurance that was available to him as a federal employee and that he was covered by this insurance at the time of his death. Plaintiffs also allege that the decedent's death was accidental and occurred from a gunshot wound inflicted by the decedent's wife, Linda Mounts.

Plaintiffs state that based on the annual salary the decedent was receiving at the time of his death, he was entitled to basic life insurance benefits of $37,000.00 and accidental death benefits of $37,000.00. However, the Plaintiffs have been unable to obtain the

proceeds of this basic insurance policy (life and accidental death and dismemberment benefits) from the insurer, which, due to the conflicting claims to the FEGLIA policy, has paid the FEGLIA benefits of $74,000.00, plus applicable interest, into the Registry of the Court.

Plaintiffs bring this action under Title 5 U.S.C. §§ 8704, 8705, and 8342, against the United States of America; its agency, Office of Personnel Management ("OPM"), Civil Service Retirement System; Metropolitan Life Insurance Company ("Metropolitan"), and Linda Mounts, the widow of David Nathaniel Mounts, to obtain the life insurance benefits of $37,000.00 and the accidental death benefits of $37,000.00, as set forth in Count 1 of their Complaint and Amended Complaint. In Count 2 of the Complaint and Amended Complaint, Plaintiffs seek to recover the decedent's pension benefits from the United States of America, Department of the Army, which consist of the contributions of $26,569.70, plus interest, the decedent had allegedly made to the Civil Service Retirement System ("CSRS") during his employment at the Bluegrass Army Depot.

In answering the Amended Complaint, Metropolitan filed a counterclaim against Jeffrey Dwayne Mounts, as Administrator of the Estate of David Nathaniel Mounts, and a cross-claim against Defendant Linda Mounts, seeking declaratory and interpleader relief. As grounds for its counterclaim, Metropolitan alleges that the decedent's estate has no standing to bring a claim for FEGLIA benefits because under FEGLIA, insurance benefits are only payable according to an order of precedence that is set out in 5 U.S.C. § 8705(a), which preempts the estate's claim. As grounds for its cross-claim against Linda Mounts, Metropolitan asserts that by reason of Linda Mounts' conviction of reckless homicide in causing the decedent's death, under federal common law, she has forfeited her rights to the FEGLIA benefits; therefore, according to the order of precedence set out at 5 U.S.C. § 8705(a), FEGLIA benefits should be paid to the decedent's children, Jeffrey Dwayne Mounts, Harold Scott Mounts, and William Steve Mounts.

This matter is before the court on the Plaintiffs' motion for summary judgment against Defendant Linda Mounts on Counts I and II of the Amended Complaint; against Defendant Metropolitan Life Insurance Company on Count I of the Amended Complaint; and against the United States of America and its agency, the Office of Personnel Management, Civil Service Retirement System, on Count II of the Amended Complaint. This motion was heard and taken under submission at the pre-trial conference on August 30, 1993.

## II. UNDISPUTED FACTS

### A. *Background information*

Plaintiffs, Jeffrey Dwayne Mounts, Harold Scott Mounts, and William Steve Mounts, are the natural children of the decedent, David N. Mounts, who was employed as a supervisory engineering technician at the Bluegrass Army Depot in Lexington, Fayette County, Kentucky. At the time of his death on or about September 22, 1990, the decedent was married to Defendant Linda Mounts, the Plaintiffs' step-mother.

As an employee of the United States, the decedent had the opportunity to obtain and did obtain basic life insurance coverage under FEGLIA, and the decedent was covered by this life insurance at the time of his death. The decedent was also entitled to pension benefits under the Civil Service Retirement System ("CSRS"), which were payable by the Defendant, United States of America, acting by and through the Office of Personnel Management ("OPM").

### B. *Life insurance benefits under FEGLIA*

Pursuant to 5 U.S.C. §§ 8701–8716, the United States of America, acting through the OPM, purchased a life insurance policy (Group Policy No. 17000–G) from Defendant Metropolitan which provides life insurance coverage for eligible federal civilian employees. Defendant Metropolitan administers this group policy for OPM.

Title 5 U.S.C. § 8705(a) prescribes the manner in which FEGLIA funds will be distributed, as follows:

**§ 8705. Death claims; order of precedence; escheat**

(a) The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office . . .
>
> Second, if there is no designated beneficiary, to the widow or widower of the employee.
>
> Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.
>
> Fourth, if none of the above, to the parents of the employee or the survivor of them.
>
> Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.
>
> Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the time of his death.

As seen from the Designation of Beneficiary form executed by the decedent on March 9, 1979, the decedent named his wife, Linda Mounts, as the beneficiary of the proceeds of the life insurance due under FEGLIA. The decedent died from a gunshot wound to the neck. Subsequent to the decedent's death, his widow, Linda Mounts was convicted in Madison Circuit Court of reckless homicide in causing the decedent's death. In an unpublished opinion rendered on July 2, 1993, the Kentucky Court of Appeals affirmed her conviction for reckless homicide. The decision by the Kentucky Court of Appeals became final on July 23, 1993, and Linda Mounts did not file a petition for discretionary review in the Kentucky Supreme Court; thus, her conviction for reckless homicide in the decedent's death is now final. Linda Mounts is presently an inmate at the Kentucky Correctional Institute for Women in PeeWee Valley, Kentucky.

Also subsequent to the death of David N. Mounts, Plaintiffs, Jeffrey Dwayne Mounts, Harold Scott Mounts, and William Steve Mounts, his natural children, have each individually filed a claim for FEGLIA benefits, and Defendant Linda Mounts, the designated beneficiary, has declined to waive her rights to the FEGLIA benefits. Faced with the conflicting claims to these benefits, Defendant Metropolitan deposited $82,879.80, which represents the FEGLIA insurance benefits due under the policy, plus applicable interest, into the Registry of the Court, pending further disposition of these funds.

### C. The CSRS pension benefits

As a federal employee, David N. Mounts was also entitled to CSRS pension benefits. At the time of his death, the decedent was entitled to $26,576.70 he had paid into his CSRS account, and he had not named a designated beneficiary of his CSRS benefits.

Title 5 U.S.C. § 8342(c) prescribes the manner in which CSRS pension benefits will be distributed, as follows:

**§ 8342. Lump sum benefits; designation of beneficiary; order of precedence**

(c) Lump-sum benefits authorized by subsections (d)–(f) of this section shall be paid to the person or persons surviving the employee or Member and alive at the date title to the payment arises in the following order of precedence, and the payment bars recovery by any other person:

> First, to the beneficiary or beneficiaries designated by the employee or Member in a signed and witnessed writing received in the Office. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.
>
> Second, if there is no designated beneficiary, to the widow or widower of the employee or Member.
>
> Third, if none of the above, to the child or children of the employee or Member and descendants of deceased children by representation.

Fourth, if none of the above, to the parents of the employee or Member or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee or Member.

Sixth, if none of the above, to such other next of kin of the employee or Member as the Office determines to be entitled under the laws of the domicile of the employee or Member at the time of his death.

Subsequent to the death of David N. Mounts, Plaintiffs, Jeffrey Dwayne Mounts, Harold Scott Mounts, and William Steve Mounts, his natural children, have each individually filed a claim for the CSRS benefits, and upon request of Defendant Linda Mounts, the United States of America has provided her with an application to file a claim for these same CSRS benefits. The Defendant United States of America is prepared to disburse the CSRS benefits, once the Court determines who among the conflicting claimants is entitled thereto.

## III. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### A. Standard for summary judgment

The Federal Rules of Civil Procedure state that a party is entitled to a summary judgment, upon motion, if "there is no genuine issue of material fact and ... the moving party is entitled to a summary judgment as a matter of law." FED.R.CIV.P. 56(c). Where a motion for summary judgment is supported by the moving party, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED.R.CIV.P. 56(e).

The United States Supreme Court has noted that Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The summary judgment standard "mirrors" the directed verdict standard of Rule 50(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ A party must support its motion for summary judgment by directing the court to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue as to a material fact. FED.R.CIV.P. 56(c). However, the moving party does not need to support its motion by "*negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). Although the moving party has the burden of showing conclusively that no genuine issue of material fact exists, all facts and inferences must be viewed in a light most favorable to the nonmoving party.

■ Moreover, a nonmoving party must rely on more than its pleadings to counter a supported motion for summary judgment:

In cases ... where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on "the pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

We do not mean that a nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds

of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

■■■ *Celotex* affirms that "nonmoving parties must fulfill their burden of production" once the moving party has met its burden of production. "The Supreme Court—Leading Cases," 100 HARV.L.R. 100, 252 (1986). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Where the nonmoving party fails to meet its burden, federal courts are prompted to grant summary judgment motions more often. 100 HARV.L.R. at 252. More importantly, "[t]he trial court has at least some discretion to determine whether the respondent's claim is 'implausible,'" *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1480 & n. 21 (6th Cir.1989), and complex cases or ones involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

■■■ Finally, a nonmoving party cannot merely rely on an allegation that a jury may not believe the moving party's witnesses in order to avoid a summary judgment:

> As we have recently said, "discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion...." Instead, the plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment.

*Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514 (citation omitted); *accord Street,* 886 F.2d at 1479 ("[t]he respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact"); 100 HARV.L.R. at 254 & n. 38.

With this standard in mind, the court will proceed to evaluate the Plaintiffs' motion for summary judgment.

In support of their motion for summary judgment, Plaintiffs contend that Linda Mounts' conviction of reckless homicide in causing the death of David N. Mounts operates as a matter of law to forfeit any rights she might otherwise might have had to both the FEGLIA benefits and the CSRS benefits. The Defendant Linda Mounts is proceeding herein *pro se.* She has filed no objection to Plaintiffs' motion for summary judgment; however, Defendant Linda Mounts has moved for a continuance of all pretrial hearings until she is released from custody and can obtain counsel to represent her in this action.

### B. *The FEGLIA benefits*

The Defendant Metropolitan administers the FEGLIA program. Metropolitan submits that regardless of the fact that David N. Mounts had named his wife, Linda Mounts, as the beneficiary of the FEGLIA benefits, as a matter of federal common law, the conviction of Linda Mounts for reckless homicide in causing his death operates to disqualify her as the beneficiary of the FEGLIA benefits.

As pointed out by Metropolitan, the FEGLIA policy is a contract issued pursuant to and governed by 5 U.S.C. §§ 8701–8716; thus, it is solely a creature of federal law. All of the terms of the FEGLIA policy are established by Congress or OPM. Metropolitan contends that the language, structure, and legislative history of FEGLIA indicate that it is pervasive and is intended to preempt all state laws which purport to establish conflicting rights to FEGLIA benefits, as seen in 5 U.S.C. § 8709(d)(1), which provides that:

> The provisions of any contract under this chapter [5 U.S.C. §§ 8701 *et seq.*] which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

Metropolitan asserts that in light of the well settled rule that "no person should be permitted to profit from his own wrong," *Shoemaker v. Shoemaker,* 263 F.2d 931, 932 (6th Cir.1959), as a matter of federal law, Linda Mounts is barred from recovering the FEGLIA benefits and that based on the order of precedence established in 5 U.S.C. § 8705, the FEGLIA benefits are payable to Plaintiffs, the natural children of the decedent.

## Applicable Law

A recent FEGLIA case, *Metropolitan Life Ins. Co. v. Christ,* 979 F.2d 575 (7th Cir. 1992), began as an interpleader action by Metropolitan to resolve conflicting claims to a federal employee's FEGLIA benefits. The conflicting claims in *Christ* stemmed from a divorce decree in 1978 which ordered the federal employee, Lawrence Christ, to maintain his three children as beneficiaries on his life insurance policies until September 13, 1993, when the youngest child would be eighteen years old. In 1988, Lawrence Christ married a second time, and in January 1990, Lawrence Christ died, still insured under the FEGLIA policy. Despite the directives of his 1978 divorce decree, at the time of his death, Lawrence Christ had never designated any beneficiary to receive the proceeds of his FEGLIA policy. Subsequent to his death, his ex-wife, Margaret Christ, as guardian for his minor children, and Melba Christ, the wife to whom he was married at the time of his death, both filed claims with Metropolitan for his FEGLIA insurance benefits.

The trial court determined that the 1978 divorce decree formed a constructive trust on the FEGLIA proceeds for the benefit of Lawrence Christ's children, and awarded the FEGLIA benefits to Margaret Christ. On appeal, the Seventh Circuit reversed, concluding that based on the order of precedence established in 5 U.S.C. § 8705 and FEGLIA's preemption clause, 5 U.S.C. § 8709(d), the district court had no authority to award the FEGLIA benefits to Margaret Christ under the constructive trust remedy. The Seventh Circuit determined that the FEGLIA benefits should be paid to his second wife, Melba Christ.

In *Christ,* the Seventh Circuit reviewed the history of FEGLIA, noting that it was enacted in 1954 "to provide low-cost group life insurance to Federal employees." H.R.Rep. No. 2579, 83d Cong., 2d Sess. (1954), *reprinted in* 1954 U.S.C.C.A.N. 3052. The Seventh Circuit also noted FEGLIA's mandatory language seen in 5 U.S.C. § 8705 that benefits "shall be paid" pursuant to the order of precedence established therein and that FEGLIA's preemption clause set out in 5 U.S.C. § 8709(d), preempts any conflicting state law or regulation that is inconsistent with FEGLIA.

The Seventh Circuit's holding in *Christ* that FEGLIA preempted state law is consistent with *Ridgway v. Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), a case involving the Servicemen's Group Life Insurance Act ("SEGLIA"), which was modeled after FEGLIA. In *Ridgway,* the United States Supreme Court held that SEGLIA preempted any inconsistent state law.

A year after *Ridgway* was decided, the Fourth Circuit Court of Appeals rendered its opinion in *Prudential Ins. Co. of America v. Tull,* 690 F.2d 848 (4th Cir.1982), a SEGLIA case involving a serviceman insured under SEGLIA who was murdered by his second wife on their wedding night. The second wife and the insured's seven children by his first marriage filed conflicting claims to the insured's SEGLIA benefits. Prudential, the insurance company administering the SEGLIA policy, filed an interpleader action to resolve the conflicting claims to the SEGLIA benefits. The trial court applied state law and awarded the insurance benefits to the insured's seven children by his first marriage.

On appeal, the Fourth Circuit in *Tull* determined that the insured's seven children were entitled to the SEGLIA benefits, but not for the reasons stated by the trial court. The Fourth Circuit held that the case was controlled by federal law rather than by state law, explaining as follows:

This case is governed by *United States v. Burns,* 103 F.Supp. 690 (D.Md.), *aff'd,* 200 F.2d 106 (4th Cir.1952) (per curiam). *Burns* applied federal law to bar recovery

of the proceeds of a life insurance policy by a beneficiary who had killed the insured. Federal law recognizes that the beneficiary's claim is barred by the equitable defense: 'No person should be permitted to profit from his own wrong.' . *See Shoemaker v. Shoemaker*, 263 F.2d 931, 932 (6th Cir.1959); *accord, United States v. Foster*, 238 F.Supp. 867, 868 (E.D.Mich.1965); *United States v. Kwasniewski*, 91 F.Supp. 847, 851 (E.D.Mich.1950); *see also Restatement of Restitution* §§ 187, 189 (1937). Although the policy in *Burns* had been issued under the National Service Life Insurance Act of 1940, 54 Stat. 1008, the provisions of the Acts material to the issue in this case are similar. Therefore, we perceive no reason why we should depart from *Burns*.

*Id.* at 849.

Plaintiffs also assert that Kentucky's Forfeiture Act, codified as KRS 381.280, bars Linda Mounts from receiving the FEGLIA benefits. This statute provides:

**381.280 Forfeiture of right to property for killing decedent**

If the husband, wife, heir-at-law, beneficiary under a will, joint tenant with the right of survivorship or the beneficiary under any insurance policy takes the life of the decedent and is convicted therefor of a felony, the person so convicted forfeits all interest in and to the property of the decedent, including any interest he would receive as surviving joint tenant, and the property interest so forfeited descends to the decedent's other heirs-at-law, unless otherwise disposed of by the decedent.

### Analysis

■ Based on a review of *Metropolitan Life Ins. Co. v. Christ, supra, Ridgway v. Ridgway, supra, Prudential Ins. Co. of America v. Tull, supra,* and *United States v. Burns, supra,* it is crystal clear that federal law, rather than state law, governs this action. The preemption clause in FEGLIA, 5 U.S.C. § 8709(d), preempts any conflicting state statute or regulation; therefore, KRS 381.280 is not relevant in determining the recipient of the FEGLIA benefits.

■ 5 U.S.C. § 8705(a) directs that FEGLIA benefits **shall be paid** on the establishment of a valid claim to a person or persons in a prescribed order of precedence. As a general rule, these benefits would be paid to the designated beneficiary; however, if there is no designated beneficiary, then these benefits would be paid to the employee's widow. If there is neither a designated beneficiary nor a widow, then these benefits would be paid to the employee's child or children. Since the employee, David N. Mounts, had named his wife, Linda Mounts, as the designated beneficiary of his FEGLIA benefits, ordinarily, Linda Mounts would be entitled to his FEGLIA benefits; however, as seen from *Ridgway v. Ridgway, supra, Prudential Ins. Co. of America v. Tull, supra,* and *United States v. Burns, supra,* the fact that Linda Mounts was convicted of reckless homicide in causing the death of her husband, David N. Mounts, operates as a matter of federal law to forfeit her right to these FEGLIA benefits, because it is well settled that "no person should be permitted to profit from his own wrong." *Shoemaker v. Shoemaker*, 263 F.2d 931, 932 (6th Cir.1959).

Since it is legally impossible under the particular facts of this case to award the FEGLIA benefits to either the designated beneficiary or to the employee's widow, turning to the third order of precedence established in 5 U.S.C. § 8705(a), the Court concludes that these FEGLIA benefits are properly payable to Plaintiffs herein, the employee's natural children from a previous marriage.

### C. The CSRS pension benefits

To reiterate, at the time of his death, the decedent was entitled to $26,576.70 he had paid into his CSRS account, and he had not named a designated beneficiary of his CSRS benefits. As seen in Title 5 U.S.C. § 8342(c), OPM follows an order of precedence that is virtually identical to the order of precedence established for the distribution of FEGLIA benefits in determining who is entitled to a federal employee's CSRS pension benefits. Concerning the CSRS benefits, the United States contends that the following two issues

of law must be resolved to determine to whom the CSRS benefits are payable:

1. Whether the decedent's surviving spouse, Defendant Linda Mounts, forfeited her right to CSRS pension benefits, by virtue of her conviction of reckless homicide, a felony offense, in causing the federal employee's death; and,

2. Whether there are any stepchildren qualified to receive any portion of the CSRS benefits.

*The forfeiture issue*

The United States advises that OPM defers to state law on the issue of whether Linda Mounts' conviction of reckless homicide in causing the death of David N. Mounts operates to forfeit her statutory rights to his CSRS pension benefits. As seen above in the FEGLIA analysis, the Plaintiffs contend that under Kentucky's forfeiture statute, KRS 381.280, Linda Mounts' conviction of reckless homicide, a felony offense, operates to forfeit any rights she otherwise might have had to the decedent's CSRS benefits, and that since her rights to these pension benefits has been terminated by her felony conviction, they are entitled to these CSRS benefits.

**Analysis**

The Court is cognizant that in an action pending in Madison Circuit Court styled *Jeffrey Dwayne Mounts, Administrator of the Estate of David N. Mounts, et al. v. Linda Mounts, et al.,* Civil Action No. 91–CI–00543, the parties are litigating the constitutionality of Kentucky's forfeiture statute, KRS 381.-280. To paraphrase this statute, it provides that if a spouse, heir-at-law, beneficiary under a will, or joint tenant with the right of survivorship or the beneficiary under any insurance policy takes the life of the decedent and is convicted therefor of a felony, the person so convicted forfeits all interest in and to the property of the decedent, including any interest he would receive as surviving joint tenant, and the property interest so forfeited descends to the decedent's other heirs-at-law, unless otherwise disposed of by the decedent.

KRS 381.280 has been in effect since October 1, 1942. This statute has been challenged and held to be constitutional. *See Wilson v. Bates,* 313 Ky. 333, 231 S.W.2d 39 (1950). However, in the action in Madison Circuit Court, Linda Mounts contends that this statute should not be applied to the nonintentional crime for which she was convicted, reckless homicide.

■ It is clear from KRS 381.280 that "intent" is not required in order for the statute to apply. This statute expressly states that forfeiture will occur if the survivor/beneficiary "takes the life of the decedent and is convicted therefor of a felony." Thus, it appears that the intent or the lack of intent of the survivor/beneficiary in causing the death of the decedent is irrelevant to the statute's application. The factor which triggers the application of this forfeiture statute is the conviction of the survivor/beneficiary for a felony offense in relation to the death of the decedent. The statute is completely silent as to "intent."

■ This Court is unaware of any precedent in Kentucky challenging the constitutionality of KRS 381.280 as applied to nonintentional felony convictions; thus, the facts established by the case at bar present a case of first impression in Kentucky. However, given the fact that KRS 381.280 is silent as to "intent" and that this statute is triggered simply by a felony conviction in causing the death of the insured, this Court concludes that KRS 381.280 is applicable to either an intentional felony conviction or a non-intentional felony conviction of the survivor/beneficiary in causing the death of the insured. Therefore, this Court also concludes that the conviction of Linda Mounts for reckless homicide, a felony offense, in causing the death of the decedent operates as a matter of law under KRS 381.280 to forfeit any rights she otherwise might have had to the decedent's CSRS benefits. Consequently, the CSRS benefits, just as the FEGLIA benefits, are payable to the Plaintiffs, the natural children of the decedent by a previous marriage.

*The stepchildren issue*

Based on Linda Mounts' representation in her answer to the Amended Complaint that there were "dependent stepchildren" who

had lived with her and the decedent, the Defendant United States recognized that initially there was an unresolved factual issue as to whether there were any eligible stepchildren who, pursuant to 5 U.S.C. § 8341(a)(4)(A), might be entitled to a portion of the CSRS pension benefits. In conducting discovery on this issue, the United States deposed Linda Mounts on June 9, 1993, who testified that prior to the death of the decedent, the stepchildren in question had been placed in foster care. To determine whether these stepchildren met the statutory requirement of "dependent" for purposes of eligibility for the CSRS pension benefits, on August 4, 1993, the United States also deposed Wanda Carroll, a duly authorized representative of the Kentucky Cabinet for Human Resources.

Subsequently, OPM reviewed the depositions of Linda Mounts and Wanda Carroll and determined from the facts established in these two depositions that the decedent's stepchildren are not entitled to CSRS benefits because they were not "dependent" within the meaning of 5 U.S.C. § 8341(a)(4)(A) at the time of the federal employee's death.

### Analysis

 Based on a review of the deposition of Linda Mounts and the sealed deposition of Wanda Carroll, the representative for the Kentucky Cabinet for Human Resources, it is undisputed that the decedent's stepchildren had been placed in foster care and did not reside with the decedent and Linda Mounts at the time of the decedent's death. Therefore, at the time of David Mounts' death, his stepchildren were not "dependent" within the meaning of 5 U.S.C. § 8342, and they are not entitled to CSRS survivor benefits.

### IV. CONCLUSION

To summarize, as there are no disputed facts, based on the applicable law, the Court concludes that the Plaintiffs, Jeffrey Dwayne Mounts, Harold Scott Mounts, and William Steve Mounts, the natural children of David N. Mounts, the deceased federal employee, are entitled to summary judgment on all counts of their Complaint and Amended Complaint.

The Plaintiffs are entitled to the FEGLIA benefits because FEGLIA preempts any conflicting state law and as a matter of federal law, Defendant Linda Mounts, the designated beneficiary and widow of David N. Mounts, has forfeited her rights to the FEGLIA benefits by virtue of her conviction of reckless homicide in causing his death. When this forfeiture is taken into account, under the order of precedence established in 5 U.S.C. § 8705(a), the FEGLIA benefits become payable to the Plaintiffs, natural children of the decedent.

The Plaintiffs are entitled to the CSRS benefits because as a matter of state law to which OPM defers, under KRS 381.280, the conviction of Linda Mounts for the felony offense of reckless homicide in causing the death of David N. Mounts operates as a matter of Kentucky law to forfeit her rights to the CSRS benefits. Further, since the decedent's stepchildren had been placed in foster care and were not residing with the decedent at the time of his death, they are not "dependent" within the meaning of 5 U.S.C. § 8341(a)(4)(A). Therefore, pursuant to the order of precedence established in 5 U.S.C. 8342, Plaintiffs, the natural children of the deceased federal employee, are also entitled to his CSRS pension benefits.

An Order and Judgment consistent with this Memorandum Opinion will be entered on the same date herewith.