**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**LaVerne KELLEY, Fran Scott, Martha Henley, Edwina Kelley, and Edward Kelley, Defendants.**

No. 94 C 3554.

United States District Court, N.D. Illinois, Eastern Division.

June 26, 1995.

Joseph J. Hasman, Sherri Lee Giffin, Peterson & Ross, Chicago, IL, for Metropolitan Life Ins. Co.

Gerald A. Goldman, Arthur R. Ehrlich, Jonathan C. Goldman, Goldman & Marcus, Chicago, IL, for LaVerne Kelley.

Martha Henley, Chicago, IL, pro se.

Edwina Kelley, Chicago, IL, pro se.

Edward Kelley, Chicago, IL, pro se.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff, Metropolitan Life Insurance Company ("MetLife"), brings this interpleader action to determine the proper beneficiary of two policies it issued covering the life of Edward Kelley, Sr. ("Edward") pursuant to the Federal Employees Group Life Insur-

ance Act ("FEGLIA"), 5 U.S.C. §§ 8701–8716. MetLife has received conflicting claims regarding the benefits from LaVerne Kelley ("LaVerne"), the widow of the deceased, and the other defendants, who are his children. The dispute over who is entitled to the benefits arises because Edward Kelley, Sr. died as a result of a gunshot wound inflicted upon him by LaVerne. LaVerne moves for summary judgment on the grounds that she acted in self-defense, and, consequently is not barred from recovering her late husband's life insurance benefits. For the following reasons, LaVerne's Motion for Summary Judgment is GRANTED.

## BACKGROUND

The facts in this case have been gleaned from LaVerne's 12(M) Statement.[1] Edward Kelley, Sr. was employed by the United States Postal Service and he opted to purchase certain life insurance benefits under the Federal Employee's Group Life Insurance ("FEGLI") policy, number 17000-G, issued by MetLife to the United States Office of Personnel Management pursuant to FEGLIA. (Rule 12(M) ¶ 2.) His wife, LaVerne Kelley, was also a federal employee, and she maintained Option C insurance coverage on her husband's life. (Rule 12(M) ¶¶ 1, 3.)

On June 17, 1993, at approximately 6:00 p.m., Edward came home drunk, got into an argument with LaVerne, and began beating her. (Rule 12(M) ¶ 8.) She left the house, but when she returned at 10:30 p.m. the fight continued. (Rule 12(M) ¶ 8.) In an effort to try to get away from Edward, LaVerne went into the kitchen. (Rule 12(M) ¶ 8.) He followed her, however, and she grabbed a can opener and he grabbed a large kitchen knife. (Rule 12(M) ¶ 8.)

He began slashing at her with the knife and threatening to "cut" her. (Rule 12(M) ¶ 9.) LaVerne dropped the can opener and ran to their bedroom, where she grabbed his rifle and pointed it at him. (Rule 12(M) ¶ 9.) Using the rifle for protection, she was able to back up into the dining room. (Rule 12(M) ¶ 9.) He followed her, though, and said again that he was going to "cut" her. (Rule 12(M) ¶ 9.) As he moved towards her, she shot him. (Rule 12(M) ¶ 9.) LaVerne called 911, and Edward was taken to Christ Hospital, where he was pronounced dead at 10:18 a.m. on June 18, 1993. (Rule 12(M) ¶¶ 9, 10.) After a review of the case, the State Attorney's Office declined to file charges against LaVerne. (Chicago Police Supplementary Report p. 4.)

As a result of Edward's death, the proceeds of his coverage under the FEGLI policy and under LaVerne's Option C policy became payable. (Rule 12(M) ¶ 4.) LaVerne was the named beneficiary of the Option C policy. (Rule 12(M) ¶ 6.) The FEGLI policy did not have a designated beneficiary, (Rule 12(M) ¶ 5), and its proceeds are payable according to FEGLIA:

> The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
> First, to the beneficiary or beneficiaries designated by the employee ...
>
> Second, if there is no designated beneficiary, to the widow or widower of the employee.
>
> Third, if none of the above, to the child or children of the employee ...

5 U.S.C. § 8705(a). LaVerne filed claims to recover the benefits due under both policies. (Rule 12(M) ¶ 7.)

1. The following recitation of background facts is drawn from LaVerne's Local Rule 12(M) Statement of material fact as to which there is no genuine issue and the accompanying exhibits. *See* UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS LOCAL RULES Rule 12(M), as well as the other pleadings and exhibits submitted to the Court in connection with the pending motion. The failure of any of the other parties in this lawsuit to file a 12(N) Statement in response to LaVerne's 12(M) Statement can be treated as a binding admission of those facts. *See Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir. 1994); UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS LOCAL RULES Rule 12(N) ("[a]ll material facts set forth in the statement required of the moving party [under Rule 12(M) ] will be deemed to be admitted unless controverted by the statement of the opposing party").

MetLife did not pay LaVerne these claims, however, because of the possibility of a civil determination of wrongful killing, which would result in LaVerne's forfeiture of her right to the insurance benefits. (Complaint ¶ 21.) Because Edward's children would not release any possible claims they could have against MetLife if it paid the proceeds to LaVerne, (Letter from Raskopf to Wright of November 24, 1993 at 1), MetLife brought this interpleader action to determine who is legally entitled to the insurance benefits.

## DISCUSSION

### A.  Standard for Summary Judgment

Summary judgment is proper if the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). A genuine issue of material fact is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might effect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* The moving party has the burden to "show" that there is no evidence supporting the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Consequently, the evidence of the nonmovant must be believed, and all reasonable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

■ However, the nonmovant cannot merely rest on its pleadings, but must show that there is admissible evidence which supports its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir.1994). The allegation that a jury may not believe the moving party's witnesses is not enough to avoid summary judgment. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15. "The court may only consider evidence and statements that would be admissible at trial and that have probative force." *Colan v. Cutler–Hammer, Inc.,* 812 F.2d 357, 365 n. 14 (7th Cir.1987), *cert. denied,* 484 U.S. 820, 108

S.Ct. 79, 98 L.Ed.2d 42 (1987). The evidence presented by the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

### B.  The Slayer's Rule

■ This case is a matter of federal common law because FEGLIA's preemption clause, 5 U.S.C. § 8709(d), preempts any state law or regulation inconsistent with its mandates. *Metropolitan Life Ins. Co. v. Christ,* 979 F.2d 575, 579 (7th Cir.1992). A fundamental equitable maxim of the federal common law is that "no person should be able to profit from his own wrong." *The Prudential Life Ins. Co. of Am. v. Tull,* 690 F.2d 848, 849 (4th Cir.1982). An outgrowth of this doctrine has become known as the Slayer's Rule, that a beneficiary who has wrongfully caused the death of an insured forfeits his right to the insurance proceeds. *Metropolitan Life Ins. Co. v. Pritchett,* 843 F.Supp. 1006, 1008 (D.Md.1994) (rule a "universally recognized principle" of justice and morality). *See also Mutual Life Insurance Co. of New York v. Armstrong,* 117 U.S. 591, 600, 6 S.Ct. 877, 881, 29 L.Ed. 997 (1886); *Tull,* 690 F.2d at 849; *Shoemaker v. Shoemaker,* 263 F.2d 931, 932 (6th Cir.1959).

■ It is generally recognized that a conviction for murder or reckless homicide will activate the Slayer's Rule. *See Metropolitan Life Ins. Co. v. White,* 972 F.2d 122, 124 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1426, 122 L.Ed.2d 795 (1993); *Mounts v. United States,* 838 F.Supp. 1187, 1194 (E.D.Ky.1993). A conviction is not always necessary, however. *See Shoemaker,* 263 F.2d at 932. "The standard in [a] civil action is not proof beyond a reasonable doubt, as in a criminal case; proof by a preponderance of the evidence is sufficient." *John Alden Life Ins. Co. v. Doe,* 658 F.Supp. 638, 641 (S.D.W.Va.1987) (children of a beneficiary who died before trial of her case could not recover benefits because they did not adequately support their allegations that she was not involved with the murder), *aff'd, in part, dismissed, in part,* 838 F.2d 466, 1988

WL 6815 (4th Cir.1988). MetLife argues that, since there is still a possibility of a civil determination of wrongfulness in the death of Edward, there is a chance that LaVerne could still forfeit her rights to the insurance proceeds according to the Slayer's Rule. Consequently, the Court must evaluate whether, by a preponderance of the evidence, LaVerne was involved in the wrongful death of Edward.

### C. LaVerne Acted in Self–Defense

■ The Court's role in this summary judgment decision is not to try LaVerne for capital murder, but to determine her eligibility to the proceeds of the life insurance policies taken out on her husband's life. For this purpose only, the Court concludes that LaVerne acted in self-defense, and can recover the proceeds of both policies.

In order to prove her claim of self-defense, LaVerne must show that she acted with a reasonable amount of force in response to an imminent, perceived threat. See Roberson v. Bethlehem Steel Corp., 912 F.2d 184, 188 (7th Cir.1990). LaVerne has described the events of the night that she shot Edward in her Rule 12(M) Statement, claiming that she believed that Edward was going to cut her and kill her with a large kitchen knife. (Rule 12(M) ¶ 11.) The State's Attorney's office declined to file charges against LaVerne because of her claim of self-defense, the fact that a knife was found in the Kelley's dining room where the shooting occurred, and because there were no witnesses or evidence to dispute LaVerne's account of the shooting. (Chicago Police Supplementary Report p. 4.) Additionally, the Court takes judicial notice of the fact that during the two years that have elapsed since Edward's death no charges of any kind have been filed against LaVerne. The other defendants in this case, Edward's children, have failed to file a 12(N) Statement in response to LaVerne's 12(M) Statement, and have provided no other evidence which would lead this Court to doubt the veracity of LaVerne's claim of self-defense. Therefore, the Court concludes that, by a preponderance of the evidence, LaVerne acted in self-defense, the death of Edward was not "wrongful," and LaVerne is entitled to recover the total insurance benefits from both FEGLI policies. See Shoemaker, 263 F.2d at 932 (there was conflicting evidence as to whether the appellant acted in self-defense, and the court determined that she, in fact, had acted wrongfully).

### CONCLUSION

For the purposes of this action, this Court concludes that LaVerne acted in self-defense when she shot her husband, Edward, and, therefore, she has not forfeited her right to receive the insurance proceeds from the policies on Edward's life as a result of the Slayer's Rule. Consequently, LaVerne's Motion for Summary Judgment (Document 26) is GRANTED, and the following results are ordered:

1. Defendant LaVerne Kelley is entitled to the insurance proceeds from Edward's $30,000 FEGLI policy and her own $5,000 Option C policy, plus whatever interest has accrued in both cases;

2. Defendants Fran Scott, Martha Henley, Edwina Kelley, and Edward Kelley have no rights to the proceeds of either insurance policy;

3. Defendants are enjoined from bringing any other claims against MetLife with regards to these insurance proceeds;

4. MetLife, upon the payment of the proper insurance proceeds to LaVerne Kelley, is released from any and all liability for any FEGLI benefits payable on account of the death of Edward Kelley, Sr.

The Clerk of the Court is directed to enter judgment, pursuant to Rule 58 of the Federal Rules of Civil Procedure, in favor of defendant LaVerne Kelley and against plaintiff Metropolitan Life Insurance Company. All parties are to bear their own costs.